UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STEVEN EARL LARSON,<br><br>                Plaintiff,<br><br>    v.<br><br>IDAHO STATE UNIVERSITY,<br><br>                Defendant. | Case No. 1:20-CV-00573-MDH |

**ORDER**

Before the Court is Defendant Idaho State University's Motion for Summary Judgment (Doc. 17). Plaintiff sues Defendant for damages due to alleged deprivation of rights secured by the Americans with Disabilities Act ("ADA"), the Idaho Human Rights Act ("IHRA"), and Idaho state law. For the reasons set forth herein, the Motion is **DENIED**.[1]

**BACKGROUND**

Plaintiff Steve Larson ("Larson" or "Plaintiff") began working for Idaho State University ("ISU" OR "Defendant") in 1997. He was a clinical instructor/program coordinator for ISU's College of Technology, Energy Systems Technology & Education Center ("ESTEC"). ISU renewed his teaching contract every year for 20 years. Plaintiff's math teaching duties at ISU had always been limited to first year math courses which did not include advanced mathematics such as calculus or pre-calculus. During that time ISU never rated Plaintiff any lower than "meets

---

[1] The Court notes Plaintiff's Motion for Hearing (Doc. 24) on the Motion for Summary Judgment (Doc. 17) at issue. With the entry of this order, the Court finds the Motion for Hearing moot.

expectations," and was rated "above expectations" every year from 2011 until his last review before he was terminated.

While employed with ISU, Larson developed a severe low back impairment requiring multi-level laminectomy and fusion in his lumbar spine in 2012. He developed adjacent disc disease which resulted in bi-lateral neuropathy in his lower extremities. Larson asserts that his supervisor and Department Chair, Ryan Pitcher was aware of Larson's disability "at a very early stage". (Doc. 20-1 at 2). Pitcher filled out the "Supervisor's Accident Report" of an October 19, 2019, back injury of Larson's:

> Steve Larson has had a history of back issues. He has had back surgery in the past and recently has had further degeneration of his spine. To the best of my recollection, Steve started having significant back pain in early September. He reported that he hurt his back getting out of a chair at home. Due to that incident at home, ***Steve has had visible impairment due to his back pain, has reported incontinence, and loss of feeling in [h]is legs and feet. As Steve's supervisor, I spoke to him regularly regarding his back***. He has back surgery scheduled for December or January depending on the surgeon's schedule and insurance approvals… ***I have asked… Steve if he requires any accommodations and routinely denies them***. Steve has continued to come to work despite this preexisting condition…He teaches in two different… buildings and has not asked the department for any accommodations for his limited mobility and pain due to his back issues.
>
> On October 19, 2016 at approximately 11:30 A.M. I stopped in to lab to see how Steve was feeling and ***he reported that when he went to stand up earlier that morning that his knees buckled and he fell to the floor landing on both of his knee caps***. I asked if he needed to go to the doctor and he said no, but he was sore. I asked if [he] needed anything and he said no. It was my understanding at that time that the fall was directly related to the loss of feeling in his legs due to his preexisting back injury that happened at home.

(Exh. 5 to Wood Decl.) (hereinafter "Supervisor's Accident Report") (emphasis added).

Plaintiff had surgery scheduled for December 22, 2016, to repair the ruptured disc above his initial lumbar fusion which was causing his impairment and disability. He advised Pitcher of the surgery in a November 30, 2016, email to Pitcher, and that he believe he would be able to return to work in about 3 months. Larson obtained in advance the necessary FMLA leave for the surgery from ISU. However, he testified that he could not afford the cost or time off work and therefore postponed the surgery indefinitely.

Larson was physically able to perform his teaching duties. During the Spring 2018 semester, ESTEC was experiencing a period of low enrollment and was focusing on recruiting new students. During periods of low enrollment, one or more ESTEC instructors might shift from performing instructing duties to performing recruiting duties. Recruiting is a required aspect of an instructor's position in the College of Technology, and it is included in the College of Technology's compensated duties and responsibilities. Michael Tauscher, who was also the Program Coordinator at the time, and Larson were the two faculty members that shifted focus to recruitment for the Spring 2018 semester. Recruiting required long drives to various high schools around the State of Idaho, and lifting of recruiting materials that weighed a total of 350 to 400 lbs.

In early January 2018, when Pitcher first assigned Larson to full-time recruiting, Plaintiff "shared [his] reservations in January with [Pitcher] about recruiting full time and the physical requirements needed to lift, haul, and manipulate the heavy totes we use for the recruiting materials as [Pitcher is] well aware of [Larson's] back surgery several years ago and [his] need for another surgery that was postponed a year ago." There were allegedly 11 other ESTEC instructors without disability who could have taken Plaintiff's place.

In early February of 2018, Larson volunteered to go on an extended recruiting trip that involved road travel to numerous high schools in Central Idaho and Western Montana. However, Larson failed to return from this recruiting trip with many contact information cards for interested students he had met on the trip, which Pitcher viewed as an essential purpose of the trip. Pitcher confronted Larson about his failure to bring back prospective student contact information cards. Pitcher then sent Larson a letter, dated February 16, 2018, addressing several topics of concern with Larson's behavior at work. None of the communications by Pitcher that occurred at this time, including the February 16 warning letter, resulted in any disciplinary action against Larson, any salary reduction,

3

demotion, or reduction in responsibility. The letter also mentioned allegedly unrelated, to Larson's back injury, issues as far as 2016. In a February 14, 2018, email, Larson mentioned difficulties with lifting, hauling and manipulating heavy totes ESTEC had been using to store and transport recruiting materials.

The issues Larson claims he encountered on the recruiting trip were related to being by himself, the time spent in the car, sleeping on motel beds, and packing the totes of recruiting materials. Defendant asserts that Larson had control over what recruiting materials he used on the trip, and the method used to pack them in his vehicle. Larson was also responsible for booking his lodging on the trip. Larson had use of a hand truck made available by ESTEC for the purpose of transporting the recruiting materials to and from the various recruiting locations.

ISU subsequently issued a Disability Determinations that stated that Plaintiff suffered a "disability" under the ADA and that ISU could have given Larson at least six other accommodations that would have made recruitment easier for him. This Determination came one month after the semester and recruitment assignment had concluded.

On March 7, 2018, he filed a Charge of Discrimination with IHRC. The IHRC received the charge and filed it on March 15, 2018. In response, within 24 hours of ISU receiving Plaintiff's charge of discrimination, Larson alleges Pitcher demanded "HR to conduct a formal inquiry of Steve Larson's behavioral past." On the same day, Pitcher filled out Larson's annual performance review, giving him the lowest performance rating since 2010. The only reason Pitcher could articulate for this change was allegedly Larson's disability. ISU maintains that Larson had a history of conflict and inappropriate behavior unrelated to his disability dating back to 2015.

On June 4, 2018, and again on June 25, 2018, Rorris from Disability Services emailed the report to Pitcher and informed him he needed to arrange the accommodations for Larson's power

4

desk and anti-fatigue mat. No action was taken.

In May of 2018, teaching assignments were made for the Fall 2018 semester. It was determined at that time that Larson would resume teaching duties in the Fall 2018 semester. Larson was assigned to teach two classes he had previously taught, as well a newly developed math course, known as "ESET 0140: Applied Technical Intermediate Algebra." ESET 0140 was first offered a year prior, in the Fall 2017 semester, and was developed and taught by Sharie Ellis. Ms. Ellis developed the course using materials from ISU's mathematics department which were used to teach an equivalent undergraduate algebra course known as MATH 1108. According to ISU, "ESET 0140 essentially combined two previously offered courses, i.e., ESET 0141 and ESET 0142, into a single course. An instructor capable of teaching ESET 0141 and ESET 0142 should be able to teach ESET 0140." (Doc. 17-2 at 7).

Larson alleges that Pitcher assigned him to teach "the most challenging math course in the curriculum, which [Pitcher] knew [Larson] had never taught before and was unqualified to teach." (Doc. 20-1 at 10). Larson asserts that he had made it quite clear in department meetings in the past he was not qualified to teach calculus. Larson had never taught or taken any courses in calculus or even precalculus. Instead, Larson alleges that the ESET 0140 course was to be taught by Evan Smith or others with an engineering or calculus background. Larson alleges that there were several teachers more qualified, and that Pitcher did not notify Larson during the three-month summer break that he would be assigned to ESET 0140 in the Fall.

In an email and letter to ISU on August 15, 2018, Larson offered his resignation. He expressed his belief that this new ESET 0140 course was just another setup by Pitcher in a long line of alleged harassment, discrimination, and retaliation, which asserted he had repeatedly communicated to ISU to no avail, and that he could no longer endure the physical and mental stress

but had no choice but to resign. ISU's policies and procedures gave it the option to refuse Larson's resignation. According to Larson, Neither Pitcher nor anyone else made any effort to disabuse Plaintiff of his belief that he was being set up for failure again with the ESET course nor offer to give Plaintiff accommodations or other assistance. Larson never received a decrease in pay, a change in title, or reduction of responsibility. After an investigation, on November 1, 2019, the IHRC issued its Administrative Review and Commission Determination, in which it found "probable cause to believe that disability discrimination has occurred." (IHRC Determination).

Plaintiff claims that Defendant's adverse action against Plaintiff, its discrimination against Plaintiff because of his disability, its failure to reasonably accommodate Plaintiff's disability, and its constructive discharge of Plaintiff from his employment were all in violation of the ADA, the IHRC, Plaintiff's express and/or implied contract of employment with Defendant, the implied covenant of good faith and fair dealing, and constituted a negligent infliction of emotional distress.

**STANDARD**

One of the primary purposes of the summary judgment rule is to "isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548 (1986). Summary judgment is proper if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). On a motion for summary judgment, the court must determine, when viewing the facts in the light most favorable to the nonmoving party, whether there exists any genuine issue of material fact. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to find in favor of the non-moving party. *See Id.*

Motions for summary judgment are governed by a shifting burden of proof under Rule 56. *Nursing Home Pension Fund, Local 144 v. Oracle Corp*. (*In re Oracle Corp. Sec. Litig.*), 627 F.3d 376, 387 (9th Cir. 2010). The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of material fact." *Celotex*, 477 U.S. at 323 (internal quotation omitted).

Once the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to a material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S.Ct. 1348 (1986). In order to defeat summary judgment, the opposing party must establish the existence of a factual dispute that is both material and genuine. *See Anderson,* 477 U.S. at 248*; Fortune Dynamic, Inc. v. Victoria's Secret Store Brand Mgmt., Inc*., 618 F.3d 1025, 1031 (9th Cir. 2010); *Freecycle Sunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010). If the non-moving party fails to do this, then "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

The Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts, Corp.*, 976 F.2d 497, 500 (9th Cir. 1992). The Ninth Circuit has found that in order to resist a motion for summary judgment:

> [T]he non-moving party (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distributors, Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir. 1989).

## DISCUSSION

To succeed on his disability discrimination claims, Larson must prove that he 1) was a disabled person within the meaning of the ADA[2]; 2) was a qualified individual able to perform the essential functions of the job with or without accommodations; and 3) suffered an adverse employment action because of his disability. *Hutchins*, 963 F.Supp.2d at 1028. The parties do not dispute that Larson is a disabled person within the meaning of the ADA nor that Larson was a qualified individual able to perform the essential functions of the job with or without accommodations. Therefore, with respect to Plaintiff's disability discrimination claims, the parties only dispute whether Larson suffered an adverse employment action because of his disability.

To succeed on a retaliation theory, Plaintiff must show that: "1) he engaged in a protected activity; 2) suffered an adverse employment action; and 3) that there was a causal link between the two." *Id.* at 1032. Similar to the discrimination claims, the parties disagree on whether Larson suffered any adverse employment action. Accordingly, the issues before the Court at the summary judgment stage is whether there is a genuine dispute of material fact regarding whether Larson was subject to adverse employment action and, if so, if there is a genuine dispute of material fact as to whether any adverse action was causally connected to Larson's disability. As discussed below, the Court finds that a genuine dispute of material fact does exist in this case.

---

[2] The IHRA is interpreted consistently with the ADA, and courts often discuss the claims together. *McWilliams v. Latah Sanitation, Inc.*, 554 F.Supp.2d 1165, 1178 n.3 (D. Idaho 2008) (citing *Loomis v. Heritage Operating, L.P.*, 2006 WL 2228964 at *2 (D. Idaho Aug. 3, 2006)).

### A. A genuine dispute of material fact exists as to whether ISU's actions constitute adverse employment action against Larson

Defendant ISU argues there is no evidence that Larson suffered an adverse employment action because of his disability or because he engaged in a protected activity. An essential element Larson must prove to succeed on any of his theories of disability discrimination is that he suffered an adverse employment action. *Hutchins*, 963 F.Supp.2d at 1028, 1032; *French v. Idaho State AFL-CIO*, 164 F.Supp.3d 1205, 1218 (D. Idaho 2016). This element is really comprised of two components: 1) the adverse action, and 2) that the adverse action was motivated (even in part) by animus based on Larson's disability or request for an accommodation. *Dark v. Curry County*, 451 F.3d 1078, 1085 (9th Cir. 2006).

Here, Larson claims that he suffered multiple instances of adverse employment action. First, he highlights the assignment to recruiting duties for the Spring 2018 semester; second, he cites communication by Pitcher following his February recruiting trip, which he characterizes as a reprimand, and the February 16 warning letter; third, he complains of the assignment to teach a course he claims he was unqualified to teach for the Fall 2018 semester; and finally, he argues that he was constructively discharged.

An adverse employment action is a change, viewed by a reasonable person under the circumstances, which materially affects the compensation, terms, conditions, or privileges of employment. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th. Cir. 2008); *See also Ninth Circuit Jury Instructions Committee, Manual of Model Civ. Jury Instructions for the Ninth Circuit Court of Appeals* (2017 Ed.), at 210. Examples include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities. *See Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004). "In the retaliation context, an adverse action is one that is 'materially adverse,' in

that it 'well might have dissuaded a reasonable [individual] from making or supporting a charge of discrimination." *Hutchins*, 963 F.Supp.2d at 1035.

Larson's allegations can be sub-divided into two general categories. First, Plaintiff argues that various actions—such as the recruiting trip and teaching assignments—constitute adverse employment action. Second, Laron asserts that he was constructively discharged.

### 1. A genuine issue of material fact exists regarding whether various alleged actions by ISU constitute adverse employment action

Defendant argues that Larson's recruiting duties, the communications and warning letter by Pitcher, and the teaching assignment do not qualify as adverse employment actions. Defendants assert that the temporary shift in Larson's duties carried no attendant demotion or loss of pay, title, or benefit. Moreover, ISU argues, while the focus on recruiting that semester may have resulted in a different mix of responsibilities for a short time, there is no evidence that these were diminished responsibilities. It is undisputed that recruiting was a required responsibility of the ESTEC faculty.

Similarly, Defendant contends that, with respect to the communications by Pitcher following Larson's February recruiting trip, including the February 16 warning letter, these items did not result in any change to Larson's job. They did not result in formal discipline, salary reduction, demotion, or reduction of responsibility. With respect to the teaching assignment for Fall 2018 (ESET 0140), ISU asserts that the assignment is "exactly the sort of responsibility that faculty members do and should expect to have." (Doc. 17-1 at 7). Defendant therefore argues that even though Larson may have preferred a different assignment, that does not make it an adverse employment action.

Defendant's assertions that no action taken by ISU toward Larson should be considered an adverse employment action does not negate genuine disputes of material facts in this case regarding those actions. Plaintiff asserts that ISU's alleged failure to accommodate is an adverse

10

employment action and that the workplace issues described above constitute adverse action for the purposes of his discrimination and retaliation claims.

First, it is clear in the Ninth Circuit "that notifying an employer of a need for an accommodation triggers a duty to engage in an 'interactive process' through which the employer and employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee." *Snapp v. United Transp. Union,* 889 F.3d 1088, 1095 (9th Cir. 2018). "[I]f an employer receives notice and fails to engage in the interactive process in good faith, the employer will face liability if a reasonable accommodation would have been possible." *Id*. (citation omitted). "In other words, there exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and reasonable accommodation." *Id*. To put it another way, the failure to reasonably accommodate a known disability is, *ipso facto,* an adverse employment action.

This conclusion follows from the explicit terms of the ADA, which provide that "an employer's failure to provide 'reasonable accommodations' is an act of discrimination." *Flores v. DISH Network LLC,* 2021 U.S. Dist. LEXIS 112967*, *41 n.8, 2021 WL 2454036 (D. Az. June 16, 2021) (citing 42 U.S.C. § 12112(b)(5)(A)). Consequently, any "additional requirement that, for example, the employee be demoted or terminated . . . would be contrary to the explicit text of the ADA. *Id*. (citing *Exby-Stolley v. Bd. of Cty. Commissioners,* 979 F.3d 784, 802 (10th Cir. 2020) (requiring an "adverse employment action" in a failure to accommodate claim "would have the effect of significantly restricting the scope of the ADA's reasonable-accommodation obligation"). The Ninth Circuit model jury instructions recognize as much by not mentioning an "adverse

11

employment action" in setting forth the elements of a failure to accommodate claim. *Id.* (citing Ninth Circuit Model Jury Instruction 12.7).

The Ninth Circuit has held that "assigning more, or more burdensome, work responsibilities, is an adverse employment action." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). Furthermore, the Ninth Circuit has found "that a wide array of disadvantageous changes in the workplace constitute adverse employment actions." *Id.* at 1240. Plaintiff argues that his assignment to recruiting duties and to teach ESET 0140 both constitute adverse action. The parties dispute whether those assignments were actually more burdensome or disadvantageous. ISU maintains that Larson was subject to the same assignments as others, and that those assignments were part of the usual responsibilities for Larson's position. Larson, on the other hand, asserts that the assignments were deliberate attempts to make his employment more difficult. The Court finds that summary judgment, based on the facts of this case, is inappropriate. Genuine disputes of material facts regarding the actions ISU took against Plaintiff remain and are critical to the resolution of the matter.

### 2. A reasonable trier of fact could conclude Larson was constructively discharged

Larson claims that he faced adverse employment action because he was allegedly constructively discharged from his position. It is undisputed that ISU intended to renew Larson's contract for the academic year beginning Fall 2018, but Larson instead resigned from his position. An employee's decision to resign can be treated as a formal discharge for purposes of a discrimination suit, but this is a high bar that requires Larson to show "working conditions [had] become so intolerable that a reasonable person in [Larson's] position would have felt compelled to resign. *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) *abrogated on other grounds University of Texas Southwestern Medical Ctr. v. Nassar*, 570 U.S. 338 (2013). This requires an

additional showing of "'aggravating factors,' such as a 'continuous pattern of discriminatory treatment.'" *Satterwhite v. Smith*, 744 F.2d 1380, 1382 (9th Cir. 1984) (*quoting Clark v. Marsh*, 665 F.2d 1168, 1174 (D.C. Cir. 1981)); *Pope v. Kaiser Foundation Health Plan*, No., Civ. S-97-1119 WBSDAD, 1998 WL 865646 at *6 (E.D. Cal. Dec. 7, 1998).

In the Ninth Circuit "[a] constructive discharge occurs when, *looking at the totality of the circumstances*, a reasonable person in the employee's position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Sanchez v. City of Santa Ana*, 915 F.2d 424, 439 (9th Cir. 1990) (emphasis added) (quoting *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987)). Whether working conditions are so intolerable and discriminatory as to justify a reasonable employee's design to resign is normally a factual question for the jury." *Id.* at 431.

Defendant asserts that Larson has admitted that he has no evidence that he suffered a pattern of discriminatory conduct from ISU, and that the record is devoid of evidence of other aggravating factors. Therefore, ISU argues, there can be no constructive discharge on the facts in the case at hand. Plaintiff, on the other hand, argues that the profusion of discrimination, harassment, and retaliation from ISU over the course of the final eight months of Larson's employment is sufficient to warrant a jury's consideration of the issue.

Based on the facts in the instant case, Larson claims numerous aggravating factors existed. Larson asserts that Pitcher set him up for failure by assigning Larson a job that Pitcher knew he could not perform without substantial accommodation. Larson asserts that Pitcher ignored and rebuffed all of Larson's efforts to obtain accommodation for his disability, and further states that Pitcher relied upon such inability as a basis for reprimanding and disciplining him. When Plaintiff reached out for help beyond Pitcher, within mere days Pitcher requested a formal inquiry into

Larson's "behavioral past." When Larson returned to work in August, he learned that in the intervening months ISU still had not provided him with any of the accommodations it promised. At that time, he claims he learned Pitcher had acted against Larson by assigning him the most difficult math course in the curriculum, one which he had never taught, and which Pitcher allegedly knew he was unqualified to teach, without even offering him any means of becoming qualified.

The Court finds that a trier of fact could conclude that a reasonable person in Larson's circumstances would have "felt that he was forced to quit because of intolerable and discriminatory working conditions." *Sanchez*, 915 F.2d at 439.

### B. The issue of causation is inappropriate for resolution by summary judgment

In addition, Plaintiff must show that the adverse employment actions alleged were causally connected to his claimed back disability. For the purposes of his retaliation claim, Plaintiff must establish that the adverse actions were causally connected to filing his charge of discrimination with the IHRC. The causation issue in the instant case is easily a matter for the trier of fact. *See Prosser v. Crystal Viking F/V*, 940 F.2d 1535 (9th Cir. 1991) ("Causation is generally a question of fact for the jury…") (citing *Lies v. Farrell Lines, Inc.,* 641 F.2d 765, 770 (9th Cir.1981)).

At the very least, it is well established in the Ninth Circuit that "temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext." *Dawson v. Entek Intern.,* 630 F.3d 928, 937 (9th Cir. 2011) (citing *Bell v. Clackamas County,* 341 F.3d 858, 865–66 (9th Cir.2003); *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 731–32 (9th Cir.1986)). Specifically, the Ninth Circuit has held that "three to eight months is easily within a time range that can support an inference of retaliation." *Coszalter v. City of Salem,* 320 F.3d 968, 977 (9th Cir.2003). With the facts discussed at length above, there

is a genuine dispute of material fact as to whether the adverse employment actions claimed by Plaintiff were causally connected to his disability or his filing of a charge with the IHRC.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 17) is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 2, 2022                             /s/ Douglas Harpool
                                                                **DOUGLAS HARPOOL**
                                                                **United States District Judge**